The court now calls case 118-230, Joshua A. McCormick v. Alexis N. Robertson. Are you ready to proceed? We are, Your Honor. Happily ready? Yes, Your Honor. You may proceed. All right, thank you. If it may please, good morning. Good morning. If it may please the court, Chief Justice Gorman, Your Honors, opposing counsel, I'm Ron Laniker, and I represent the appellant, Alexis Robertson, on appeal. As important as this appeal is for my client, Alexis, and the minor child, the issues here presented are by no means limited to this case, as this appeal addresses fundamental matters relating to the power of the courts to hear and adjudicate cases and matters before it and where the court's power is ultimately derived from. At the center of the paternity action and the issues here regarding jurisdiction is a 4-year-old child for which two states have accepted jurisdiction for under their respective laws. One is Nevada under their state's requirements with the Uniform Child Custody and Jurisdiction Act, and Illinois pursuant to its constitution. What we're asking the court to do is uphold and affirm the judgment of the Circuit Court of Champaign County, finding that the 2010 judgment entered in that county is void due to lack of subject matter jurisdiction. Just a real brief summation of the facts. In 2010, my client, who was not a resident of Illinois and whose minor child was not a resident of Illinois and had no context with Illinois, went to Champaign County and voluntarily signed off on a judgment of paternity and of supplemental matters relating to child custody, visitation, and so forth.  Subsequent to that, my client had resided in Nevada with a minor child for a period of a year following that. And as a result, and subsequent to it, filed an action in Nevada asking that the court in that state accept custody of it based upon their own rules regarding jurisdiction. At the same time, we had filed a motion to vacate the 2010 order which actually stated that the court did not have subject matter in relation to the Uniform Child Custody and Jurisdiction Act. As a result of that, in February of 2014, we had an interjurisdictional conference pursuant to the UCCJEA between the courts in Nevada and the courts in Champaign County. And both justices concurred and ruled that based upon the respective jurisdictional statutes of the UCCJEA in both jurisdictions, because the child had no significant contacts in Illinois and had not resided in Illinois, the jurisdiction should be in Nevada. And furthermore, the order was vacated as of February 2010 as there was no jurisdiction or subject matter jurisdiction in that matter. Does it matter that at the time the judgment was entered in Champaign County no other state had assumed jurisdiction or attempted to assume jurisdiction of any matter pertaining to this case? I don't believe so, because the statute specifically states that a state would accept jurisdiction if it is the home state of the child within six months of the time. And there are a number of other exceptions to that. So the fact that Missouri could have had jurisdiction at that time, had the mother elected to do so, Missouri might have had jurisdiction. But the matter is, is there jurisdiction in the state of Illinois for the court to actually make a ruling as far as subject matter jurisdiction and as it relates to custody and matters along those lines.  Is there jurisdiction if the parties submitted to jurisdiction in Champaign County and the court could still not obtain any jurisdiction? Well, the issue there comes to an issue of necessarily waiver. I don't believe that the parties – we are saying that provision of the statute dealing with the exclusive jurisdiction would be trumping in this limited element the constitutional requirements of subject matter jurisdiction. So to that extent, I don't believe that – I mean, an argument could be made that both parties had submitted to the UCCJEA as of that February 2014 conference and actually at that point submitted to the jurisdiction. I mean, that is something that is certainly an argument that can be made. Are you, counsel, asking us to reverse based upon an analysis along the lines of Justice Gromitter's third type of jurisdiction in that, what, a Gilberto case, I believe? To an extent. What I'm asking – Before you answer that question, would that be contrary to our decision in Belleville-Toyota? It would not necessarily. And I think that Justice Gromitter actually parses it out fairly well. The Belleville-Toyota decision talks about subject matter jurisdiction pursuant to the Constitution as having jurisdiction over all justiceful matters. In other words, the court can be allowed to hear cases of a certain kind. What Justice Gromitter did, and what actually the courts have actually referred to after that in some circumstances, is that there's actually three types of jurisdiction. You have personal jurisdiction, which is not an issue in this case. You have subject matter jurisdiction, which is the dispute here to the extent as it states jurisdiction in the UCCJEA and the Constitution. And following that, you have a third rail of jurisdiction, for lack of a better word, which talks about jurisdiction over a definite person or over a definite – or the power of the court to actually hear a case of a particular type. Now, since Belleville-Toyota was entered by this court, there have been a number of cases which have found that there are still some jurisdictional limitations based upon statutes. And those have mainly been in the criminal element, and they have also included, in the case of Alexis T., a matter of involuntary commitment, which again approaches and gets close to the civil element of the case. And what Justice Gromitter was stating is that this third element of jurisdiction, the power to actually render a particular decision, is something that is a subsection of subject matter jurisdiction. And as a result of that, and again, bearing in mind the issues here with Enri Alex T., in that matter, and in these other criminal matters, and the special set of concerns that the court is actually stating in Steinbrecher, when a party is faced with a matter along the lines of a liberty interest, courts are going to still find that there are limitations on jurisdiction that can be allowed. In the case of Enri Alexis T., you were talking about the involuntary commitment of an individual. In the relation to the actual criminal statutes, you're talking about, again, you're talking about a person's rights. In this matter, and I don't believe that it's contested between the parties, having a child and having custody of that child is a liberty interest, which is one of those limited exceptions to the Belleville-Toyota analysis. So there are circumstances following the court's rulings here in Belleville where that still needs to be limited to some certain extent. In trying to find an analogy to it with jurisdiction, because these are complex issues, you can consider, say, somebody receiving a general admission ticket to a fair. And while they're inside the fair, actually needing to buy a separate ticket or pay a separate fee in order to take a ride, albeit a ferris wheel. And while subject matter jurisdiction, as it relates to Belleville, allows you to get into the park, it does not, considering limited circumstances, give you necessarily a ticket to ride a specific ride, a.k.a. a ferris wheel. And I think that's the distinction here that Justice Grometer is talking about. You have subject matter jurisdiction where the courts can hear all judicial matters. But when it comes to the power to render a particular decision, and especially as it relates to the power where there's some specificity to it, whether there's a liberty interest or, in this case, specifically speaks about jurisdiction, that's something that the court has to take particular notice of. And it's something that a limited exception for those matters can apply. Would we have to overrule Belleville? I don't believe you would have to overrule Belleville. I believe what you would ultimately end up doing, and I think that the case law is still somewhat new on this, is try to determine that there is an exception for jurisdictal matters or subject matter jurisdiction when a party has a liberty interest, when there are certain circumstances which arise. Now, what's interesting with this case is the issues of jurisdiction reach another dimension in that we're talking about interjurisdictional conflicts between courts of other states. And that's when you start to talk about, when you look at the statute, it lays out specifically which jurisdiction where the child is going to have the initial jurisdiction. So we would have to either overrule or carve out an exception per the Grometer third type of jurisdiction analysis? Well, it may be carving out an exception. It might be considering taking a different viewpoint of some of the cases before in the past. Well, didn't Belleville hold it with the exception of administrative actions that Illinois courts derive their subject matter jurisdiction exclusively from the Illinois Constitution? That is correct. So they've already said, Belleville has already said, administrative actions aside, this is how we look to subject matter jurisdiction. But since Belleville, there have been a number of cases which have attempted to define outside of the Belleville-Toyota, outside of that argument and outside of that, to actually show that there still are some specific issues where there are exceptions. And that started with the Steinbrecher case, which talked about the separate set of concerns in a criminal matter, which specifically point out that when there's a... I know the way that a bright line rule would go would not necessarily impact your client. But is this an area that you would say a bright line rule would help? I think it would be extremely helpful. And I recall back when we had this matter, and before we were having the inter-jurisdictional conference with a court in Nevada, which does not have the same constitutional provisions that Illinois does related to jurisdiction. And you have a statute here where the fundamental and determinative purpose is whether there is jurisdiction over this minor child for the court to enter it. That a bright line rule, should the court bring one, I think would be greatly helpful. Now, I believe that is something... Let me ask you another question, if you don't mind, as we move on in the time here. The appellate court relied heavily on Siegel versus Siegel, a case a little older than Belleville, but certainly with language that is very predictive, maybe, of Belleville-Toyota. You don't respond to that case in any way. And I wanted to give you an opportunity to do that. In Siegel versus Siegel, this court said, looking at an earlier version of the same statute, we note parenthetically that Section 601 speaks in terms of, quote, jurisdiction of the subject matter of child custody determination. Jurisdiction of the subject matter of such determinations, at least in the traditional sense, is conferred upon our circuit court by the constitutional provisions that the circuit courts shall have original jurisdiction. We eliminate the possibility of confusion by pointing out that, quote, jurisdiction is not being used by the General Assembly in its traditional subject matter sense, but in the sense of a limitation upon the exercise of the existing jurisdiction. That certainly was a very important piece of the appellate decision in this case. Can you respond to that? Absolutely. With the Siegel case, first of all, the case came out, as the Honor mentioned, in 1981, which was prior to the current UCCJA Act. That was a previous act dealing with jurisdiction. The second thing is the appellate court, when they made the decision here with regards to Siegel, was trying to make a decision that there was a procedural exit, that the UCCJA is an actual procedural exercise. And it really did not turn into a matter of its own subject matter jurisdiction. In answering the question, I would note that in Siegel, it talks about the constitutional framework of it, but then it goes on to continue on the line of cases before Bellville-Toyota. And I believe that that case made a finding and continued to follow some of the law in these matters. So I think it's hard to weigh it, especially in a matter like this, where the law is changing. And certainly, you have a 1964 Constitution and a 1970 amendment. You also have a 2002 Bellville-Toyota decision. Where the difficulty lies is there are things that kind of go in a matter of clucks. And the Respondents' Council, or the appellee, has stated that the court shouldn't be looking at any of the cases prior to 2002, which all are saying that there is a constitutional limitation on actual jurisdiction. Is the difference, a practical difference here, whether or not a court order is wrong, is an error, is reversible error, that can be, for example, in this case, she could have objected to what happened in Champaign County. If the court ruled against her, she could have appealed. All of this could have been sorted out before. The difference seems to be that what the suggestion you're making is that because the court had no subject matter jurisdiction, this agreed order could be attacked at any time. That is correct. And because it did, and whether the parties had waived it or whether there's an objection is not necessarily relevant. In fact, because there was no jurisdiction, as it related to subject matter jurisdiction, it could be attacked at any time. So there's no finality in this kind of order? There is no, I don't believe so, to be quite honest. There is, to the extent that you're trying to, you know, can she object, is there a certain time frame? I think it gets back down to, well, if the court does not have jurisdiction in a matter, it's going to be considered to be void. The finality of it, to some extent, what we would have been trying to do last year with trying to vacate an order, that would have been incorrect. And I believe that because of that, I mean, the order was actually void at the time. And unfortunately, with these situations, things, and like any case, it's something that if the order's void and there's no actual discretion for the court to actually make an argument, that's something that can be attacked. Now, I understand why the Constitution was written the way it is. You want to give a broad outline so that cases that are coming before the court are not going to be limited by legislature or a jurisdictional matter. However, there are circumstances after you get into the park where you really have to determine there are some times when that should actually be limited. And I think that's something that we are asking the court to consider here. To the extent that it actually relates to our case, again, with the jurisdictional arguments, the legislature stated, or it did actually, and I mentioned this in my reply brief, actually mentions that the jurisdiction of this case is going to actually relate to where the custody of the child is. And the idea is because at a court, where the child is actually living and residing in is going to be in the best case and in the best scenario to actually make determinations on that child's well-being, on where the custody should be, and visitation and matters of that sort, which was the entire purpose of the UCCJEA Act in the beginning. So in summary then, I would basically state that we're asking this court to uphold the judgment here of the court in Champaign County, finding that the February 10th order was a win. Could there be a possible reading that the court had jurisdiction originally because the party submitted to the jurisdiction, that the court retained jurisdiction until the dispute arose and that the UCCJEA sets forth a template for how courts in different states are to resolve the issue of where the case should further go forward and then until the court in Champaign County conceded that the jurisdiction now was in Nevada or wherever it had jurisdiction, which would give finality to the court order that was entered some years ago and could be enforced up until the time that jurisdiction was conceded to another state. That's possible. Is Your Honor asking whether that order would actually have been allowed until the formatted order in 2014? Right. I don't believe so based upon what I'm reading here, that if you don't have jurisdiction, you can't be in kind of a middle ground or quasi-jurisdiction until somebody contests it. But Illinois didn't have jurisdiction based upon the issues raised by the UCCJEA, which was never raised to the court originally. Isn't that correct? It was not. However, the statute was still applicable in paternity cases along these lines when it actually comes forward with jurisdiction. So the statute would be applicable initially when you actually start to talk about matters of jurisdiction here and whether the court would have jurisdiction. But then we would be carving out an exception from Bellville-Toyota. Is that true? That's a possibility. As far as carving out an exception from that, I believe that there are cases which have carved out circumstances, and there are issues here where the court could certainly be doing that. Now, if there's a matter here where you're talking about there's jurisdiction until it's contested by some point and then afterwards, after the UCCJEA gets involved, I think that is a plausible argument here because you do have a situation, and it was a matter at that point where the UCCJEA was involved because another court had actually taken jurisdiction in another state. And because of that, then you can argue that the UCCJEA would apply and would actually at that point become more of an issue with the jurisdiction. Thank you. Your time has expired. Counsel? Good morning, Your Honors. Good morning. I'm Paul Wilson of Rand Tool, and I represent the father in this particular case. And if the court pleases the counsel, we obviously dispute the position taken by the mother. In terms of background, the counsel is quite correct. This was an agreed-upon order. The testimony was presented to Judge Blockman, who entered the order granting joint custody to the parties. The mother was present. She was questioned in court. She had the opportunity to object to the jurisdiction of the court and never did so. We could get into arguments. Did she accept benefits of this judgment over a period of four years before she suddenly objected to it? But none of that was presented to the trial court. This was all decided on a motion heard by an associate judge, not the judge who originally entered the order. And, frankly, our position was. Is any of that relevant? I mean, there either was jurisdiction or there wasn't, right? Well, I suppose it's only relevant  But I would agree because our position, basically, is that jurisdiction is somewhat akin to pregnancy. Either you are or you aren't. And I think that's exactly the case here. I think that's what Belleville stands for. And that is we don't care what transpired in days past. We care that the Constitution of 1970 imbues the circuit court with jurisdiction to hear all cases, essentially. A few exceptions, none of which are applicable here. And the only thing that has to happen is it has to be a justiciable matter. What's a justiciable matter? And that is clearly that the legislature recognizes this as a general class of cases that the circuit court can hear. And we go back in Illinois to the Bastard Act in the 1800s. Again, reenacted from time to time until we have the current and pending it this time, Parentage Act of 1984, I believe it was. But in any event, consequently, the legislature said, Okay, judiciary, this is a justiciable matter. You got jurisdiction. And once you have jurisdiction, and the cases are a plethora of cases cited to this court in the briefs, that once you have jurisdiction, and Steinbrecher emphasized this, you have the authority to rule on a case, right, wrong, however, you can't question jurisdiction. If we hold that the criteria that UCCJEA do not or does not dictate subject matter jurisdiction, what implications does this have for the state adopting uniform or model legislation going forward? I think it has no impact upon it. I think the UCCJEA is a valid statute. We're not attacking that. What we are attacking is the cases are manifold, that essentially when you have a proceeding in parentage, the UCCJEA is a procedural statute. And you follow that procedure. And if you didn't follow the procedure, if the trial court erred, then that's got to be brought forth either under Section 735 ILCS, Section 2-1301 or 2-1401. Obviously, there are time standards with that. Those time standards transpired about four and a half years before the I violated Judge Blockman's order. I took the kid out of the state of Missouri and went to Nevada. And, oh, golly, after this has been filed and Judge Blockman ordered the father to file a petition for at least temporary custody, then the mother runs out and gets herself a lawyer in Nevada. So under your theory, she either had to raise UCCJEA initially or she can't raise it later. Is that right? I mean, the Illinois court has jurisdiction. It doesn't make any difference. Is that right? She's got 30 days or under 2-1401, she's got two years. No, but I mean, so I hope I'm not misunderstanding you, that you are saying when she didn't raise it initially, she's out of the box. In other words, then the UCCJEA doesn't have any applicability. Is that correct? That's right. Because the portion of the UCCJEA that's relied upon by the mother at this point goes to initial orders of custody. Mr. Wilson, can you articulate the problem with Justice Grometer's third type of jurisdiction analysis? Well, I think it flies in the face of Belleville-Toyota. So you would take the position Belleville would have to be overruled if we agree with Justice Grometer? Yes, sir. As well as this court's subsequent rulings in Steinbrecher and a plethora of other cases have been cited, even as recently as the juvenile case in CM that this court decided. Would you agree, though? I mean, counsel candidly admitted that a bright-line rule from this court would be helpful. I know that a bright-line rule could go one way, it could go the other, and your clients may be adversely affected, either one of you, by a bright-line rule. But by indicating that a bright-line rule is necessary, it necessarily says that the law in this area isn't so bright right now. We have another case in jurisdiction before this court that was argued earlier this term. We have another case. We seem to have a number of cases in jurisdiction. Would you agree or is your position that it's just very clear? Belleville and that's all you have to do? I think it's very clear. And I think that if we look at the cases cited by the mother in her briefs, there's a lot of talk about Gilberto. Well, Justice Groomeyer, though a very learned jurist, and frankly I liked his writing, but that was a dissent. That was not the case decision. It was a dissent. And he was basically saying, oh, boy, look at Belleville. We've got to overcome that. And how did he interpret the cases that have, if you will, found exceptions? Well, he talked about in Gilberto, let's distinguish in his dissent in Gilberto, how do we distinguish Steinbricker? Well, Steinbricker kind of left us a loophole in terms of talking about criminal cases. So maybe there's a different standard. So maybe what our Constitution's appropriate interpretation is to say, oh, when we're talking about a significant restriction of liberty, and that's what's talked about in Alex T., a mental health procedure for involuntary administration. It's talked about in Nathan, a fourth district decision. And basically it's saying that if there's a big follow-up, a reviewing court does have the authority, an inherent authority to correct that error. In Jamie, this court's decision, it was approaching a criminal proceeding, and this court essentially said, well, since this is a criminal case, there's going to be a strict construction of the court's authority. Now, how do we drive this with this court's ruling in Belleville? And I think that perhaps, and I don't want to put words in the court's mouth, but perhaps what the court was thinking is we're looking at these criminal or juvenile delinquency cases, and even though our Constitution in Illinois says you've got jurisdiction, we are still subject to the provisions of the Fifth Amendment to the United States Constitution as brought home by the 14th Amendment to the Constitution, where we're talking about due process. And I think there are some old cases that basically say, well, that means we've got to prove people guilty beyond a reasonable doubt. And the only thing I could think of, and I've grown more gray hair trying to figure this one out myself, but the bottom line is I'm thinking, well, maybe we're trying to say this due process connotation should enter into the picture here. But it's only been, as Justice Bromeyer suggests in his dissent, Steinbrecher was saying there's an exception in criminal cases, something where you're talking about significant invasions or limitations on personal liberty, whether it's a mental health admission, whether it's a juvenile court wanting to extend a probationary period beyond the age of 21, whether it's extending a prison sentence beyond what is statutorily authorized, something along those lines that simply isn't the case here. None of the cases cited in my brief and the mother's brief really justify any exception at all in this case, including adopting Justice Bromeyer's third line of jurisdiction. He's trying, in his opinion, as is the mother here, to create an exception to Belden, to put another nuance in. And other than the bright line, I think it muddies the line or would. It's going to throw us back into the circuit courts to retry cases. And these are cases that should have been settled 20 years ago. But now, if we change that and bring in this bright line, aren't we really opening it up to retrying all these cases that have been tried, cited, and lived with for years in Illinois? And I fear that we are. I believe that the cases that have been cited in our brief, and there are about half a dozen of them, pretty clearly established that you've got 30 days to appeal. You don't wait four and a half years. And actually, I think it was in the Salvas case, there was even a suggestion that constitutional rights and non-constitutional rights can be waived by a party if they don't raise it. And coming back four and a half years later, I think is a perfect example of that. But all of these cases provide, I believe, that the appropriate remedy for a litigant, if they're not happy with the result, is to comply with the Code of Civil Procedure. And that is, you've got a 213.01 30-day window, or in the event of fraud or something like that, then you've got two years under 214.01. So I think that those are really dispositive. The cases are replete because the mother keeps saying, well, we're talking about the statutory jurisdiction. There is no statutory jurisdiction. There's statutory guidelines under the UCCJEA. The Constitution flows not from the UCCJEA, irrespective of its use of the word jurisdiction. It flows from the Constitution. And I think the law is clear on that. Cases are cited clearly establishing, Jerome, Alexander, that the use of the word jurisdiction really doesn't mean jurisdiction in this statute. And for that reason, I think that there's not much question but that there was a pregnancy called jurisdiction. And there was jurisdiction. There's no question about it. And to attempt to let the mother rewrite the Belleville law that everybody's lived with for a long time is going to do a severe injustice. And despite the fact that there is much concern about, you know, we're dealing with a 4-year-old child, 5-year-old child maybe now at this point, as his counsel would say, we're talking about liberty. I'm like, sure we are. Dads, too. The brief is complete in terms of establishing that here's a couple who had a child and the father was out of the country for quite some time serving in the United States Marine Corps including combat tours in Afghanistan. So if we're talking about, well, let's think about the parties. Let's think about the child. Well, let's think about dad, too, because under the Bates analysis, he, too, has significant rights. For that reason, we are imploring the court to sustain the well-reasoned decision of the 4th District in this case and to direct that this order be implemented and the matter be remanded to the Circuit Court of Champaign County for further proceedings. Thank you, Your Honor. Thank you. I want to just briefly just clarify something that counsel had stated with Justice Grodemeyer. He refers to Justice Grodemeyer actually stating that it was a dissent. It was actually a concurrence where Justice Grodemeyer had actually concurred with the majority's decision that there was a statutory limitation to jurisdiction. And as such, he was attempting to try to explain a little bit better how these types of jurisdiction actually were applying in the case. Counsel also talks about some of the factual matters of this case. And I think that the court, if it looked at the February 2010 judgment, Mr. McCormick got a fairly good deal. He was going overseas to Afghanistan, but the child support was reserved. And since that time, and as our petitions state in the affidavit show, Mr. McCormick has paid $250 to my client in child support. He also had received joint custody of the child, and he was overseas for quite some time. So when counsel pines on about it taking four years, well, much of that is because, and it was written in the original judgment that way, that he was going to be gone for a substantial period of time. And that related to a large part to the inaction. The reason that space is coming forward at this point is because counsel had filed a petition to change the custody in December of 2013, asking that the child actually come to Illinois and reside there. And he ordered the mother on a section with an actual order, and ordered the mother over a 13-day period to come to Illinois and bring the mild child with her. And that was something that Judge McPeter stated was tantamount to harassment. So we have a situation here, and I concur with this, where other states have, you have a statute which is set up for the purpose of determining which state is going to have the child custody jurisdiction at certain times. And it lays out fairly clearly what that jurisdiction is. And this is set up, and every state has adopted it in its basic form to make a determination on where that should be lying. And we went through the entire process the way that it should have, the way that it was stated as of statute with two judges. But what you have now, and my fear, is if we do have a situation where it does go back to the circuit court, we will have a change of custody proceeding in Champaign County. We also have a court in Nevada which, pursuant to the same conference, has accepted jurisdiction, and there's already been a custody order that's been entered there. That's going to create more confusion, and it's going to create more problems than answers. And it's an unfortunate situation. To the extent that the statute is talking about jurisdiction in this way, I think is a different dimension than how these cases have been for this court as they relate to jurisdiction, because we are dealing with jurisdiction going with state lines. And I think that it's pretty clear here that whether that the issue and however the Constitution determined whether the court has original jurisdiction in this matter, this is something that is going to be, one way or the other, right or wrong, continue to be defined and redefined by the courts in this matter. So I appreciate the court taking this matter before it, because there is something that, and you mentioned a bright-line rule. I mean, from a proceeding, it's something that it certainly would be helpful, but again, I think we have to be mindful of the circumstances here and the actual matter that's going on. So, again, we would ask that the court affirm the decision of the court. Thank you. Thank you. Case number 118230, Joshua A. McCormick v. Alexis N. Robertson, will be taken under advisement as agenda number 11. Mr. Laniker and Mr. Wilson, we thank you for your interesting arguments today, and you are excused at this time. Mr. Marshall, this concludes the court's January term of court, and we stand adjourned.